USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: March 31, 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOUGLAS JOHN ANDERSON,

                Plaintiff,

-against-

CARELON BEHAVORIAL HEALTH, INC., et al.,

                Defendants.

24-CV-09260 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is a discrimination lawsuit.  Plaintiff is Dr. Douglas John Anderson, an elderly Vietnam war veteran who was diagnosed with renal cancer and heart failure, and is now deceased.  Defendants are Carelon Behavioral Health Inc., the Elevance Health Companies, Inc., and Elevance Health Inc. (together, "Corporate Defendants") and Hossam Mahmoud, Peter Haytaian, David J. Wolfe, Fatimah Ann Tahil, and Suzanne Rumsey (together, "Individual Defendants").  Before the Court is Defendants' motion to dismiss claims against the Individual Defendants and a motion for Plaintiff's spouse as administratrix of his estate to replace him as Plaintiff.  For the following reasons, both motions are GRANTED.

BACKGROUND

I.     **RELEVANT FACTS**[1]

Plaintiff was a seventy-nine (79) year old doctor and Vietnam war veteran.  FAC ¶¶ 5, 9. At all times relevant to this lawsuit, Plaintiff was a resident of New Jersey.  *Id.* ¶ 5.  Plaintiff worked as a doctor for Corporate Defendants, giving medical advice remotely from New Jersey.

---

[1] The following facts come from the First Amended Complaint ("FAC") at Dkt. No. 22 and are assumed true solely for purposes of resolving the motion to dismiss.  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 104 (2d Cir. 2021).

*Id.* ¶¶ 22, 46.  His patients were residents of New York State or New York City or were insured as New York City or New York State residents.  *Id.* ¶ 43.  Plaintiff would also travel to New York City every two weeks for approximately thirty minutes to meet his supervisors and discuss patients' progress and needs.  *Id.* ¶ 42.

In 2016, Plaintiff "began experiencing and exhibiting symptoms" of his renal disease.  *Id.* ¶¶ 6, 58.[2]  On February 27, 2023, Plaintiff learned he was in end-stage renal disease, and his doctor advised him to go to the emergency room.  *Id.* ¶ 65.  Plaintiff took medical leave until March 4, 2023, and—upon his return to work—requested from Defendant Tahil "a reasonable accommodation in order to have outpatient hemodialysis, short term, until Plaintiff could eventually transition to peritoneal dialysis at home."  *Id.* ¶¶ 66–67.  Plaintiff intermittently took medical leave or worked for the next few weeks until April 6, 2023.  *Id.* ¶ 70.  He then worked a slightly reduced schedule until July 4, 2023.  *Id.* ¶¶ 70–71.

Plaintiff contends that the Individual Defendants "participated in developing a scheme to illegally terminate" him and "tried to pretextually mask the illegal termination with adverse actions against others who were not in the same protected categories as Plaintiff."  *Id.* ¶ 74.  He alleges the Defendants knew mass layoffs were happening in other divisions and used that as an opportunity to terminate Plaintiff.  *Id.* ¶ 75.  Plaintiff also alleges that other members of his group were terminated but then shortly re-hired.  "Plaintiff was the only older, disabled, decorated Vietnam war era veteran Medical Director with military status selected by Defendants for termination."  *Id.* ¶ 84.  He alleges Defendants made the decision to terminate his employment in New York City.  *Id.* ¶ 44.

---

[2] Plaintiff at some point received diagnoses of renal cancer, "resulting in home peritoneal dialysis," and "congestive heart failure with permanent atrial fibrillation and an implanted pacemaker/defibrillator," although it is unclear whether this occurred in 2016, as well.  *Id.* ¶ 60.

## II.   PROCEDURAL HISTORY

Plaintiff filed this lawsuit in the Supreme Court of the State of New York, New York County, on October 28, 2024.  Dkt. No. 1-1.  Defendants removed to this Court on December 5, 2024.  Dkt. No. 1.  Plaintiff filed a First Amended Complaint on February 5, 2025.  Dkt. No. 22. Count One alleges the Corporate Defendants violated New Jersey's Law Against Discrimination ("NJLAD") by discriminating against Plaintiff based on his age and disability.  FAC ¶¶ 104–07. Count Two alleges the Corporate Defendants retaliated against Plaintiff in violation of the NJLAD.  *Id.* ¶¶ 108–12.  Count Three alleges all Defendants aided and abetted violations of the NJLAD.  *Id.* ¶¶ 113–17.  Lastly, Counts Four through Eleven allege violations of the New York City Human Rights Law ("NYCHRL") and New York State Human Rights Law ("NYSHRL"). *Id.* ¶¶ 118–74.

Defendants responded to the First Amended Complaint by moving to dismiss.  Dkt. No. 23.  Defendants principally raise two arguments.  First, they argue the Court should dismiss the counts arising under the NYCHRL and NYSHRL as Plaintiff cannot show his termination impacted him in New York State.  And second, Defendants argue the Court should dismiss the Individual Defendants entirely because there are no non-conclusory allegations tying them to illegal conduct.  After briefing concluded on the partial motion to dismiss, Defendants filed a notice Plaintiff had passed away.  The Court subsequently received a motion for Plaintiff's spouse and administratrix of his estate to substitute as Plaintiff.  Dkt. No. 35.  Both motions are now fully briefed and before the Court for decision.

## DISCUSSION

### I.    LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

### II.    DEFENDANTS' PARTIAL MOTION TO DISMISS IS GRANTED

#### A.  Plaintiff Cannot Show His Termination "Impacted" Him in New York

Defendants first argue the Court should dismiss Counts Four through Eleven, arising under the NYCHRL and NYSHRL, because Plaintiff cannot show his termination "impacted" him in New York State.  The Court agrees.

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

The NYCHRL protects only New York City's "inhabitants." N.Y.C. Admin. Code § 8–101. The NYSHRL, meanwhile, applies only to the "people of" New York State or "every individual within" the State. N.Y. Exec. L. § 290(2)–(3). Construing this language, the New York Court of Appeals in *Hoffman v. Parade Publications* ruled that a nonresident of New York or New York City may invoke the NYSHRL or NYCHRL only if the nonresident can show that alleged discriminatory conduct "impact[ed]" them in New York State or New York City, respectively. 933 N.E.2d 744, 747 (N.Y. 2010); *see id.* ("[T]he application of the impact requirement does not exclude all nonresidents from its protection; rather, it expands those protections to nonresidents who work in the city, while concomitantly narrowing the class of nonresident plaintiffs who may invoke its protection."). In reaching this decision, the Court of Appeals overturned a lower court's ruling that a plaintiff could show the NYCHRL and NYSHRL applied simply because an alleged discriminatory decision to terminate was made in New York City. *Id.* at 745–47.

Plaintiff resided in New Jersey and worked remotely. Although his job occasionally required him to come to New York to deal with administrative tasks, all of his medical duties were performed from his home in New Jersey. Accordingly, he cannot show that his termination impacted him in New York, and the Court will dismiss the counts of the First Amended Complaint alleging violations of the NYCHRL and NYSHRL.

Plaintiff's counterarguments fall in quick succession. Plaintiff highlights his allegation that Defendants allegedly made the decision to terminate his employment in New York City. But *Hoffman* confronted an analogous fact and determined it failed the impact requirement. *Hoffman*, 933 N.E.2d at 747. Plaintiff also points to the thirty (30) minute meeting he had every other week in New York City. These occasional meetings are insufficient to establish his

5

termination had an impact in New York.  *See Pedorza v. Ralph Lauren Corp.*, 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020) ("Courts have repeatedly held that a non-resident plaintiff's occasional meetings in or travel to the City are tangential and do not satisfy the impact requirement."); *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013).  Lastly, Plaintiff argues his termination had an impact in New York because his patients were in New York.  This argument ignores that the impact had to be on Plaintiff, not other people.  *See Fried v. LVI Servs., Inc.*, No. 10-CV-09308 (JSR), 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) ("[The plaintiff] must prove that the decision to terminate his employment impacted him in New York City."), *aff'd*, 500 F. App'x 39 (2d Cir. 2012).  The Second Circuit also rejected an identical argument in *Vangas v. Montefiore Medical Center*.  *See* 82 F.3d 174, 183 (2d Cir. 2016) ("To hold otherwise, such that the NYCHRL would cover employees who work at call centers outside the city and whose only contacts with NYC are phone conversations with persons in the city, would broaden the statute impermissibly beyond those 'who work in the city.'").

Accordingly, the Court will dismiss Counts Four through Eleven of the First Amended Complaint.

### B.  The Individual Defendants Are Dismissed

Next, Defendants move to dismiss the Individual Defendants from this lawsuit.  They argue the First Amended Complaint does not state whether the Individual Defendants knew about Plaintiff's age, military status, or (besides Tahil) the extent of his disability.  Dkt. No. 24 at 11.  Defendants also highlight that there is no allegation Tahil had a role in Plaintiff's termination.  *Id.*  And they point out Plaintiff has not alleged "any discriminatory remarks, jokes, or slurs by Tahil, any other Individual Defendant (or any other employee of the Corporate Defendants for that matter)."  *Id.*

6

Once again, the Court agrees. Although the First Amended Complaint alleges generally that "the Individual Defendants were aware of Plaintiff's disabling conditions," FAC ¶¶ 49, 59, there are no allegations tying any Individual Defendants to any alleged discriminatory conduct. In order to hold an individual liable as an aider and abettor under NJLAD, a plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)). The First Amended Complaint generally alleges each Individual Defendant was a "bully" and "ableist," FAC ¶¶ 25–38, but it omits any well-pleaded or specific allegations suggesting any Individual Defendant harbored discriminatory attitudes. Furthermore, besides Tahil, there are no corroborating allegations that the Individual Defendants knew of Plaintiff's medical history, and there are no allegations showing any Individual Defendant was aware of his age or Military status. Finally, Plaintiff's group-pleading allegation that the Individual Defendants "participated in developing a scheme to illegally terminate" him and "tried to pretextually mask the illegal termination with adverse actions against others who were not in the same protected categories at Plaintiff" is entirely conclusory. *Id.* ¶ 74. These general and conclusory allegations are entirely insufficient, even at the pleading stage, to state a claim that any of the Individual Defendants were aware that they were part of an "overall illegal or tortious activity" and that they "knowingly and substantially assist[ed]" in it. *Tarr*, 181 N.J. at 84. Accordingly, the Court will dismiss all individual Defendants.

7

## III.    THE MOTION TO SUBSTITUTE IS GRANTED

Finally, the Court will GRANT the motion to substitute Angela Retano-Anderson, the widow of Plaintiff and administratrix of his estate, as Plaintiff in this lawsuit.  Federal Rule of Civil Procedure 25(a)(1) allows a court to "order substitution of the proper party" upon death of a party for whom the claim in the case "is not extinguished."  "In considering a motion to substitute a party pursuant to Rule 25(a)(1), the Court must decide whether: (1) the motion was timely; (2) the claims survive the decedent's death; and (3) the party sought to be substituted for the decedent is a proper party." *Wagley v. JPMorgan Chase Bank, N.A. as trustee of Mary Penney Wagley Irrevocable Tr.*, No. 18-CV-08668 (PGG), 2021 WL 1406001, at *1 (S.D.N.Y. Apr. 13, 2021).  All three requirements are met here.

First, the request is timely.  Defendants filed a suggestion of death on June 12, 2025. Dkt. No. 33.  Plaintiff moved to substitute on August 14, 2025, within the permitted ninety (90) day period.  Dkt. No. 35.  Second, Plaintiff's claim survives his death.  *See* Dkt. No. 35-2 at 2.  Third and last, Ms. Retano-Anderson, as Plaintiff's widow and administratrix of his estate, is an appropriate party.

### CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss (Dkt. No. 23) is GRANTED and the motion to substitute party (Dkt. No. 35) is GRANTED.  Angela Retano-Anderson is hereby SUBSTITUTED for Dr. Douglas John Anderson.  The Clerk of Court is respectfully directed to terminate Dkt. Nos. 23 and 35.

The Court will enter a separate Order referring the parties to mediation, consistent with this district's standing order on counseled employment discrimination cases.  The parties are directed to participate in the mediation in good faith, and to submit a joint status letter to the

8

Court within 7 days of the mediation conference, regarding the status of settlement and

appropriate next steps, if any, in this matter.


Dated: March 31, 2026
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

9